John G. Kerkorian (SBN 142901)
kerkorianj@ballardspahr.com
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400
Facsimile: 602.798.5595

Elanor A. Mulhern (SBN 279103)
mulherne@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia , PA 19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999

Matthew A. Morr *(pro hac vice)*
morrm@ballardspahr.com
BALLARD SPAHR LLP
1225 17th Street, Suite 2300
Denver, CO 80202-5596
Telephone: 303.292.2400
Facsimile: 303.296.3956

Attorneys for Defendant,
SIERRA PACIFIC MORTGAGE COMPANY, INC

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEVIN COLE, on behalf of himself and all others similarly situated,

Plaintiff(s),

v.

SIERRA PACIFIC MORTGAGE COMPANY, INC., and DOES 1 through 10, inclusive,

Defendants.

Case No. 3:18-cv-01692 – JCS

**SIERRA PACIFIC MORTGAGE COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT**

Date: 12/17/2021

Time: 9:30 AM

Court:

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on December 17, 2021 at 9:30 a.m., or as soon thereafter as counsel may be heard by the above-captioned Court, in the Courtroom of Judge Joseph C. Spero via the Zoom Webinar instructions, Defendant Sierra Pacific Mortgage Company, Inc. ("SPMC") will and hereby does move the Court for an order granting summary judgment in its favor pursuant to Federal Rule of Civil Procedure 56 on the autodialer issue. [ECF 92]. This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declarations of Matthew Morr and David Kalat, all supporting exhibits, the pleadings and papers on file, and upon such matters as may be presented to the Court at the time of the hearing.

**CIVIL LOCAL RULE 7-4(a)(3) STATEMENT OF ISSUE TO BE DECIDED**

Whether the Court should grant summary judgment in favor of SPMC with respect to Plaintiff, Devin Cole's ("Plaintiff"), claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA"), as to whether SPMC called Plaintiff using an "automatic telephone dialing system" within the meaning of the TCPA.

DATED: October 29, 2021

Ballard Spahr LLP

*/s/ Matthew A. Morr*
Matthew A. Morr
Attorneys for Defendant
Sierra Pacific Mortgage Company, Inc

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1
II. PERTINENT BACKGROUND ........ 2
III. SUMMARY JUDGMENT SHOULD BE GRANTED IN SPMC'S FAVOR ........ 3
a. Summary Judgment Standard. ........ 3
b. The Automatic Telephone Dialing System as Defined by the Telephone Consumer Protection Act. ........ 3
c. Plaintiff Has Failed to Meet His Burden of Proof by Failing to Establish That the Calls Were Placed Using an ATDS. ........ 4
d. The VICIdial Platform Does Not Generate Telephone Numbers Randomly or Sequentially and Therefore is Not an ATDS. ........ 6
e. Plaintiff's Expert Report is Misguided and Mischaracterizes the Court's Decision in *Facebook*. ........ 7
f. The Ability to Sort and Filter An Existing List of Numbers is Distinct From the Ability to Generate Telephone Numbers Either Randomly or Sequentially. ........ 10
IV. CONCLUSION ........ 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-cv-06314-YGR, 2018 U.S. Dist. LEXIS 132078 (N.D. Cal. Aug. 3, 2018) .......... 6

*Barry v. Ally Fin., Inc.*, No. 20-12378, 2021 U.S. Dist. LEXIS 129573 (E.D. Mich. July 13, 2021) .......... 9, 10

*Borden v. Efinancial, LLC*, No. C19-1430JLR, 2021 U.S. Dist. LEXIS 153086 (W.D. Wash. Aug. 13, 2021) .......... 9, 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 3

*Collins v. Nat'l Student Loan Program*, 360 F. Supp. 3d 268 (D.N.J. 2018) .......... 5

*Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3d Cir. 2018) .......... 4, 5

*Estrella v. LTD Fin. Servs., LP*, 2015 U.S. Dist. LEXIS 148249 (M.D. Fla. Nov. 2, 2015) .......... 5

*Facebook v. Duguid*, 141 S. Ct. 1163 (2021) .......... *passim*

*Franco v. Alorica Inc.*, 2021 U.S. Dist. LEXIS 164438, at * 6 6 (C.D. Cal. July 27, 2021) .......... 11

*Hufnus v. Donotpay, Inc.* No. 20-cv-08701-VC, 2021 U.S. Dist. LEXIS 118325 (N.D. Cal. June 24, 2021) .......... 6, 9, 10, 11

*Kennedy v. Applause, Inc.*, 90 F.3d 1477 (9th Cir. 1996) .......... 3

*Lee v. LoanDepot.com, LLC*, No. 14-1084-EFM, U.S. Dist. LEXIS 20994 (D. Ka. Feb. 14, 2017) .......... 5

*Legg v. Voice Media Grp., Inc.*, No. 13-62044-CIV, 2014 U.S. Dist. LEXIS 61322 (S.D. Fla. May 2, 2014) .......... 6

*Marshall v. CBE Grp., Inc.*, No. 2:16-cv-02406-GMN-NJK, 2018 U.S. Dist. LEXIS 55223 (D. Nev. Mar. 30, 2018) .......... 5



Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .......... 3

*Meyer v. Portfolio Recovery Assocs. LLC*,
707 F.3d 1036 .......... 4

*O.S.C. Corp. v. Apple Comput., Inc.*,
792 F.2d 1464 (9th Cir. 1986) .......... 3

*San Pedro-Salcedo v. Häagen-Dazs Shoppe Co.*,
No. 5:17-cv-03504-EJD, 2019 U.S. Dist. LEXIS 208228 (N.D. Cal. Dec. 3, 2019) .......... 5

*Tehrani v. Joie De Vivre Hosp.*,
LLC, No. 19-cv-08168-EMC, 2021 U.S. Dist. LEXIS 165392 (N.D. Cal. Aug. 31, 2021) .......... 7, 8, 10

*Timms v. USAA Fed. Sav. Bank*,
No. 3:18-cv-01495-SAL, 2021 U.S. Dist. LEXIS 108083 (D.S.C. June 9, 2021) .......... 10

*Villiarimo v. Aloha Island Air, Inc.*,
281 F.3d 1054 (9th Cir. 2002) .......... 3

*Watts v. Emergency Twenty Four, Inc.*,
No. 20-cv-1820, 2021 U.S. Dist. LEXIS 115053 (N.D. Ill. June 21, 2021) .......... 9, 10

**Statutes**

Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* .......... *passim*

**Other Authorities**

Fed. R. Civ. P. 56(a) .......... 3

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

**TABLE OF EXHIBITS**

| **Declaration of Matthew A. Morr** | |
|---|---|
| **Ex. No.** | **Description** |
| 1 | Declaration / Expert Report of David Kalat ("Kalat Dec.") |
| 2 | Declaration of Randall A. Snyder ("Snyder Dec.") |
| 3 | Deposition of Dan Gavin ("Gavin Tr.") (excerpts) |

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

## I. INTRODUCTION

Pursuant to the Court's June 25, 2021 Order [ECF 92], Sierra Pacific Mortgage Company, Inc. ("SPMC") respectfully moves for summary judgment with respect Plaintiff, Devin Cole's ("Plaintiff") claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") relating to the issue of whether an automatic telephone dialing system ("ATDS") as defined by the TCPA was used to call Plaintiff's cell phone. Pertinent here, to establish a *prima facie* violation of the TCPA, Plaintiff carries the burden of proving that the calls placed to his cellular phone were made by an ATDS – defined by the TCPA as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

In April 2021, the United States Supreme Court's decision, in *Facebook v. Duguid*, 141 S. Ct. 1163 (2021), fundamentally changed the legal standard of what constitutes an ATDS as defined by the TCPA. 141 S. Ct. 1163 (2021). The Supreme Court held that a necessary feature of an ATDS under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called. Pertinent here, this means that a telephone dialing system that does not randomly or sequentially generate numbers to call, but rather, dials numbers from a list loaded into the dialing system, is ***not*** an ATDS.

Here, Plaintiff cannot come forward with evidence – including expert evidence – to satisfy his burden of establishing that the calls at issue were made using an ATDS. First, Plaintiff cannot put forth any admissible evidence establishing what dialing system from which the calls at issue in this case were made. Second, and more importantly, the undisputed evidence unequivocally establishes that the dialer allegedly used to call Plaintiff's cell phone, the VICIdial platform ("VICIdial") dialing system, was ***not*** a random or sequential number generator and, thus, ***not*** an ATDS. Specifically, the evidence demonstrates that the VICIdial allegedly used to make the subject calls did not have the functionality to store or generate phone numbers using a random or sequential number generator and to subsequently dial those numbers. To the contrary, before any call is initiated, the VICIdial must be provided with information, including phone numbers, from an ***external*** source.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

For these two straightforward reasons, Plaintiff cannot establish that an ATDS was used to call his cell phone. Therefore, SPMC urges the Court to enter summary judgment its favor, and against Plaintiff, on the sole claim alleged in the Complaint for purported TCPA violations.

## II. PERTINENT BACKGROUND

SPMC is a corporation that provides mortgage lending and brokerage services to individuals in the state of California. [Answer ¶¶ 4, 17 (ECF 23)].

Plaintiff Devin Cole ("Plaintiff") is an individual residing in Contra Costa County, California. [Compl. ¶ 9 (ECF 1)]. Plaintiff alleges that, in or around February 2018, he began receiving calls from SPMC on his cell phone. [Compl. ¶ 21]. In his Complaint, Plaintiff asserts that SPMC's calls to his cell phone were placed using an ATDS within the meaning of 47 U.S.C. § 227(b)(1)(A). [Compl. ¶ 28].

For a limited time-period, SPMC engaged a third-party vendor, KB Synergy to generate live leads of qualified, consenting prospective customer who had both opted-in to receiving information about mortgage refinancing opportunities, and met certain qualification criteria. [Declaration / Expert Report of David Kalat ("Kalat Dec.") ¶ 14 (Morr Dec. Ex. 1); Deposition of Dan Gavin ("Gavin Tr.") at 14:23-15:17 (Morr Dec. Ex. 3)]. KB Synergy testified it used the services of a Philippine-based call center Blueshift to conduct outbound communications to prospects identified in lead lists of people who had consented to be called obtained from third-party vendors. [Gavin Tr. at 16:8-15, 75:6-17, 76:11-14].

Plaintiff asserts Blueshift used a VICIdial platform dialing system ("VICIdial") to place calls to the Plaintiff and to numbers from the lead lists. [*See* Gavin Tr. at 70:3-17, 104:7-17; Kalat Dec. ¶15]. Plaintiff asserts VICIdial was used to call his cell phone by SPMC's agent or on SPMC's behalf.[1] [Compl. ¶¶ 28-29, 31; Declaration of Randall A. Snyder ("Snyder Dec.") ¶ 38 (Morr Dec., Ex. 2)]. No testimony or admissible evidence has been produced showing Blueshift placed the calls at issue using VICIdial.

---

[1] SPMC did not make the calls, and SPMC denies KB Synergy or Blueshift are its agents or that the calls were made on its behalf. SPMC also notes it is its position that Plaintiff consented to the calls. [*See* Gavin Dep at 76:15-22]. Under the June 25 Order [ECF 92], these issues are not addressed in this motion.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

At no time, including during the relevant period alleged in the Complaint, has VICIdial had the capacity to store or produce telephone numbers using a random or sequential number generator and to dial those numbers. [Kalat Dec. ¶ 5]. To the contrary, the VICIdial must be provided with information, including phone numbers, from an external list. [*Id.* at ¶ 28]. Thus, the VICIdial does not have, and never has had, the functionality to store or generate random or sequential phone numbers and automatically call those numbers. Rather, the selected numbers VICIdial called were provided via the lead lists, not generated from the VICIdial itself. [Kalat Dec. ¶ 24]. Accordingly, the VICIdial is not an ATDS.

## III. SUMMARY JUDGMENT SHOULD BE GRANTED IN SPMC'S FAVOR

### a. Summary Judgment Standard.

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the moving party" demonstrates "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To withstand summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (citation and quotation marks omitted). The non-moving party cannot defeat summary judgment by relying on mere speculation, conjecture, or fantasy. *O.S.C. Corp. v. Apple Comput., Inc.*, 792 F.2d 1464, 1467 (9th Cir. 1986); *accord Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("[T]his court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony.") (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)). If the non-moving party fails to carry her burden, then the "court has a duty to grant the motion for summary judgment." *O.S.C. Corp.*, 792 F.2d at 1467.

### b. The Automatic Telephone Dialing System as Defined by the Telephone Consumer Protection Act.

Under the TCPA, it is unlawful to make certain calls "using any automatic telephone

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

dialing system" to a "cellular telephone service" without the "prior express consent of the called party. 47 U. S. C. §227(b)(1)(A); *Facebook*, 141 S. Ct. at 1167-68 (2021). The term "automatic telephone dialing system", or ATDS, means:

> "equipment which has the capacity—
>
> "(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
> "(B) to dial such numbers."

47 U.S.C. § 227(a)(1).

The United States Supreme Court's decision in *Facebook* provides a clear roadmap to determine what constitutes an ATDS under the TCPA. The Supreme Court held that a necessary feature of an ATDS under §227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called. Specifically, the Supreme Court held that to constitute an ATDS, "a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id.* at 1167-69. *Facebook* unambiguously narrowed the definition of what constitutes an ATDS, thereby resolving a circuit split and explicitly rejecting the broader definition of ATDS Plaintiff relies upon in the Complaint. [*Compare* 141 S. Ct. at 1167-69 *with* Compl. ¶ 28.] In so doing, the *Facebook* decision defeats Plaintiff's ATDS claim as a matter of law and SPMC is entitled to summary judgment on this issue. *See* 141 S. Ct. at 1167-69.

**c. Plaintiff Has Failed to Meet His Burden of Proof by Failing to Establish That the Calls Were Placed Using an ATDS.**

To state a claim under 47 U.S.C. § 227(b)(1)(A), a plaintiff must plausibly allege that "(1) the defendant called a cellular telephone number; (2) using an ATDS; [and] (3) without the recipient's prior express consent" *Meyer v. Portfolio Recovery Assocs. LLC*, 707 F.3d 1036, 1042-43 (see also, *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018) ("affirming grant of summary judgement to Yahoo where plaintiff could not show that Yahoo's system "had the present capacity to function as an [ATDS] by generating random or sequential telephone numbers and

dialing those numbers”).

Plaintiff has the burden of proving that each call to his cell phone was made with an ATDS. *See San Pedro-Salcedo v. Häagen-Dazs Shoppe Co.*, No. 5:17-cv-03504-EJD, 2019 U.S. Dist. LEXIS 208228, at *15 (N.D. Cal. Dec. 3, 2019) (noting ATDS use is an essential element of a TCPA claim and plaintiff carries the burden of proof); *Collins v. Nat'l Student Loan Program*, 360 F. Supp. 3d 268, 274 (D.N.J. 2018) (granting defendant’s motion for summary judgment for plaintiff’s lack of evidence proving an ATDS was used); *Lee v. loanDepot.com, LLC*, No. 14-1084-EFM, 2017 U.S. Dist. LEXIS 20994, at *4 (D. Kan. Feb. 14, 2017*)* (granting summary judgment to defendant when plaintiff presented no evidence regarding defendant’s dialing system); *Estrella v. LTD Fin. Servs., LP*, 2015 U.S. Dist. LEXIS 148249 at *8 n.5 (M.D. Fla. Nov. 2, 2015) (plaintiff’s declaration is not competent summary judgment evidence to establish that defendant used an ATDS).

Plaintiff cannot present any admissible evidence on how the calls at issue were made. Said another way, Plaintiff cannot present any admissible evidence the calls were made from VICIdial. The only evidence regarding the system from which the calls were made are inadmissible hearsay and lack foundation. [*See* Gavin Tr. at 104:14-18 (confirming that he does not know which dialing system Blueshift used)]. While an expert *may* be able to rely upon hearsay and unauthenticated emails to render an opinion, the Plaintiff must still meet its evidentiary burden establish that the calls were made from an ATDS.

Here, Plaintiff’s proffered expert, Snyder, never examined the VICIdial allegedly used to make the calls and his report is not admissible evidence of the dialing system from which the calls were made. As noted in a case involving Snyder, an expert cannot “create a disputed issue of material fact in TCPA cases where the expert in question has not examined the dialing infrastructure at issue.” *Marshall v. CBE Grp., Inc.*, No. 2:16-cv-02406-GMN-NJK, 2018 U.S. Dist. LEXIS 55223, at *19 (D. Nev. Mar. 30, 2018) (“[T]he Court is unpersuaded that Plaintiff can rely on Snyder's conclusions to establish a genuine issue of material fact that the LiveVox system used in this case has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.”); *see also Dominguez v.*



Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

*Yahoo, Inc.*, 894 F.3d 116, 120 (3d Cir. 2018) (granting summary judgment in favor of the defendant because there was no evidence whether the dialing system could generate random and sequential numbers and dial those numbers; excluding Snyder's report as "speculative" and unhelpful). Indeed, in addition to the holding that Snyder's report is not admissible evidence as to the system from which calls were made, other courts have disregarded Snyder as a witness because he failed to actually inspect the dialing system at issue. *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-cv-06314-YGR, 2018 U.S. Dist. LEXIS 132078, at *20-21 (N.D. Cal. Aug. 3, 2018) (excluding Mr. Snyder's opinion because he "did not examine the machine, but only reviewed the capabilities literature provided by the manufacturer of the Ytel Dialer and information from witnesses who used the device"); *Legg v. Voice Media Grp., Inc.*, No. 13-62044-CIV, 2014 U.S. Dist. LEXIS 61322, at *14 (S.D. Fla. May 2, 2014) (rejecting Snyder's testimony as an improper legal conclusion and lacking "an adequate factual foundation" because he did not actually inspect the system). The key issues here are: (1) there is no proof of what dialing system was used; and (2) more importantly, and as set forth below, the VICIdial is not a ATDS under *Facebook.*

Because there is no admissible evidence regarding the system from which the calls at issue were made, summary judgment should be entered in SPMC's favor.

**d. The VICIdial Platform Does Not Generate Telephone Numbers Randomly or Sequentially and Therefore is Not an ATDS.**

The VICIdial allegedly used to make the calls at issue is not an ATDS. As discussed above, in order to be considered an ATDS, a dialing system must have the capacity to use a random or sequential number generator to either store or produce numbers to be called. *Facebook*, 141 S. Ct. at 1173. The Supreme Court specifically explained that the TCPA's definition of an ATDS concerns devises that allow companies "to dial random or sequential blocks of telephone numbers automatically," *Id.* at 1167. The definition of an ATDS does not include platforms that have the capacity to randomly or sequentially dial numbers from a pre-produce list created for a specific purpose or campaign. *Hufnus v. Donotpay, Inc.* No. 20-cv-08701-VC, 2021 U.S. Dist. LEXIS 118325, at 3-4 (N.D. Cal. June 24, 2021). Here, the VICIdial can only call numbers from a



Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

preexisting list.

The purpose of the TCPA, was to target telemarking equipment which has the potential to tie up emergency lines. *Tehrani v. Joie De Vivre Hosp*., LLC, No. 19-cv-08168-EMC, 2021 U.S. Dist. LEXIS 165392, at *13 (N.D. Cal. Aug. 31, 2021) (citing *Facebook*, 141 S. Ct. at 1171). The Court in *Tehrani* reasoned that because "these are the harms that the TCPA was intended to address, then little would be gained by finding a TCPA violation based on a preexisting customer database." *Id.* at *13.

SPMC's expert David Kalat ("Kalat") analyzed the VICIdial and concluded that the VICIdial "does not have the inherent capacity to generate numbers using a random or sequential number generator. [Ex.1 ¶24.] The phrases "random number generators" and "sequential number generators" describe "algorithms that respectively generate random numbers, or numbers that are sequentially iterated incrementally." [*Id.* at ¶26.] Essentially, when a system uses a random and sequential number generator, it creates a telephone number from scratch, thus dialing numbers that were not obtained from consumers. [*Id.* at ¶27] Based on his observations and previous *direct* examination of the VICIdial, Kalat found the VICIdial does not have any mechanism to generate telephone numbers using a random or sequential number generator. [*Id.* at ¶¶17, 21.] Rather, the VICIdial is only able to place calls to telephone numbers that are imported from a list and assigned to certain campaigns. [*Id.* at ¶21.]

The VICIdial specifically runs off software, which can either be downloaded, run locally or remotely from a cloud-hosted service. [Kalat Dec. ¶ 23.] Regardless of how the software is run, VICIdial does not have the capacity to store or generate telephone numbers algorithmically by any means, and thus cannot "use a random or sequential number generator" to "store or produce telephone numbers to be called." [Kalat Dec. ¶¶ 1, 21, 24.] Simply put, this means that the VICIdial is only able to place calls to telephone numbers from a pre-produced list and thus, is not an ATDS as it is defined by the TCPA.

**e. Plaintiff's Expert Report is Misguided and Mischaracterizes the Court's Decision in *Facebook*.**

The report of Plaintiff's expert, Snyder, does not show that the VICIdial is an ATDS under

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

the definition set forth in *Facebook*. Snyder claims *Facebook* cited U.S. Patent 4,741,028 ("'028 Patent") and relies heavily on his review of that patent to assert that "Defendants utilized equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers." [Kalat Dec. ¶29; Snyder Dec. ¶15.]

Snyder misstates that the Supreme Court cited to the '028 Patent in *Facebook.* There is no reference to the '028 Patent in the Supreme Court's decision. The '028 Patent is merely "referenced in a footnote in a single Amici brief submitted by Professional Association for Customer Engagement and Noble Systems Corporation ["PACE"] which [Amici brief] in turn was referenced in a *footnote* in the Court's opinion." [Kalat Dec. ¶ 31.]

Courts have since addressed this footnote and rejected Snyder's assertion regarding the '028 Patent. In *Tehrani*, the Court explained that the PACE Amici "brief makes clear that the 'preproduced list' was not some kind of pre-existing list but rather a list of phone numbers that was generated by a number generator. *Tehrani*, 2021 U.S. Dist. LEXIS 165392, at *16. The Court quoted the relevant portion of the brief, and emphasized that the '028 Patent refers to dialers which "*first generate[] a sequence of telephone numbers within a specified range, which are stored into an array in memory*." It does not refer to a list of pre-produced numbers from which to dial. *Id.* The methodology of the '028 Patent "involves the storage of the first six digits of a 10-digit number, a mathematical algorithm to generate the remaining four digits, and the storage of the resulting number to be dialed later." [Ex. 2 at ¶ 30]. This is blatantly different from the methodology of the VICIdial because the VICIdial cannot generate numbers using a random or sequential number generator. [Kalat ¶ 24]. Rather, a list of numbers must be provided from an external source.

To the extent Plaintiff argues, and Snyder implies, that Footnote 7 of *Facebook*, is controlling here, he is incorrect. In Footnote 7 and its corresponding text, the Supreme Court squarely rejected the argument that it should limit "the phrase 'using a random or sequential number generator' to modify only 'produce.'" *Facebook* 141 S. Ct. at 1171-72. In rejecting the argument that application of the phrase to "store" would be "superfluous," the Court noted that

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

patents had been issued "for devices that used a random number generator to store numbers to be called later" and "an autodialer [ATDS] might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time." *Id*. at 1172 & n.7.

Several courts have since followed the Supreme Court's interpretation and rejected the argument that Footnote 7 allows for an additional interpretation of the phrase "store." *See e.g. Borden v. Efinancial, LLC*, No. C19-1430JLR, 2021 U.S. Dist. LEXIS 153086, at *14-16 (W.D. Wash. Aug. 13, 2021); *Hufnus*, 2021 U.S. Dist. LEXIS 118325, at *3-4 (plaintiff's "reading of footnote 7 conflicts with *Duguid's* holding and rationale"); *Watts v. Emergency Twenty Four, Inc.*, No. 20-cv-1820, 2021 U.S. Dist. LEXIS 115053, at *8-9 (N.D. Ill. June 21, 2021) (concluding plaintiff had not alleged the use of an ATDS; 'the alleged facts suggest that instead of randomly or sequentially generating Watts's number, EMERgency24's equipment stored Watts's number in a database and dialed that stored number because he was an employee at a business that used EMERgency24's alarm notification system").

For example, in *Borden*, the court granted the defendant's motion to dismiss a TCPA action with prejudice and expressly rejected the plaintiff's reliance on Footnote 7 to support his argument that "it is enough that an autodialer 'use a random number generator to determine the order in which to pick numbers from a preproduced list [and] then store those numbers to be dialed at another time'". *Borden*, 2021 U.S. Dist. LEXIS 153086, at *14-16. Instead, the court reasoned that the only reading of Footnote 7 that was consistent with the entirety of the opinion in *Facebook* is that using a random and sequential number to determine the sequence of numbers drawn from a ***random*** list of numbers triggers the TCPA. *Id.* at *5 (noting that the preproduced list at issue was a stored list of consumer-provided phone numbers).

In *Barry*, the court granted the defendant's motion to dismiss a putative national class action brought under the TCPA. The court rejected the plaintiff's interpretation of Footnote 7 – that it allowed for the possibility that a TCPA violation exists where a "random number generator [was used] to determine the ***order*** in which to pick phone numbers from a preproduced list. *Barry v. Ally Fin., Inc.*, No. 20-12378, 2021 U.S. Dist. LEXIS 129573, at *17-19 (E.D. Mich. July 13,

2021) (emphasis added). The court reasoned that Footnote 7 was merely the Supreme Court's attempt to "explain how an autodialer might both 'store' and 'produce' randomly or sequentially generated phone numbers" by explicit reference to 1988 equipment. *Id.* at *17-18.

In *Hufnus*, the court granted the defendant's motion to dismiss a TCPA action without leave to amend because the company called only phone numbers supplied to it by consumers, and rejected the plaintiff's reading of Footnote 7 – that defendant "uses a random number generator to determine the order in which to pick from the preproduced list of consumer phone numbers," as "acontextual" with both the language of footnote itself and the *Facebook* opinion at large. *Hufnus*, 2021 U.S. Dist. LEXIS 118325, at *2-3. "The Supreme Court explained in *Duguid* that the TCPA's definition of autodialer concerns devices that allow companies 'to dial random or sequential blocks of telephone numbers automatically,' not systems, such as DoNot Pay's, that randomly or sequentially dial numbers from a list that was itself created in a non-random, non-sequential way." *Id.* at __. Like the dialing system in *Hufnus*, the VICIdial dials from a list that was created in a non-random, non-sequential way.

In *Timms*, the court granted Defendant's Motion for Summary Judgement concluding that because the system at issue was capable of "making telephone call only to specific telephone numbers from dialing lists created and loaned by [Defendant]" they cannot store or produce telephone numbers suing a random or sequential number generator. *Timms v. USAA Fed. Sav. Bank*, No. 3:18-cv-01495-SAL, 2021 U.S. Dist. LEXIS 108083, at *17 (D.S.C. June 9, 2021); *see also Tehrani*, 2021 U.S. Dist. LEXIS 165392, at *18-19 (finding the decisions in *Hufnus*, *Watts*, *Barry*, *Borden* and *Timms* persuasive).

Nothing in *Facebook*, or otherwise, qualifies in any way the Supreme Court's holding that "a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Facebook* at 1167. The VICIdial, like the dialing systems in *Hufus* and *Timms*, does not possess any such ability.

**f. The Ability to Sort and Filter An Existing List of Numbers is Distinct From the Ability to Generate Telephone Numbers Either Randomly or Sequentially.**



Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

Snyder also asserts that "because the VICIdial software is a *predicative dialer*" it has the capacity to store telephone numbers using a random or sequential number generator. [Ex. 2 ¶ 40.] Importantly, this argument shows Snyder agrees that the VICIdial dials numbers that are provided via a contact lists for particular campaigns. However, he "wrongly conflates the routine functionality of sorting and filtering an existing list of numbers with the specific functionality of using algorithmic processes to generate telephone numbers from scratch to be dialed." [Kalat Dec. ¶¶ 38-40, Snyder Dec. ¶¶ 51-57.]

Under *Facebook*, if the dialing system does not generate the numbers on its own, but rather sorts the numbers ***after*** they have been inputted, the dialing system is not an ATDS. For example, in *Franco v. Alorica Inc.*, the court held that when a pre-produced list of numbers was provided, "defendant did not randomly or sequentially *generate* phone numbers. Instead, it merely used technology that randomly selected the phone numbers that were voluntarily provided to them." No. 2:20-DV-05035-DOC- (KESx), 2021 U.S. Dist. LEXIS 164438, at *6 (C.D. Cal. July 27, 2021 (citing *Hufnus* at *1; "when a defendant randomly selects phone numbers from a list of voluntarily provided phone numbers, the defendant is not using an ATDS, and therefore is not in violation of the TCPA"). The *Franco* court concluded such technology does not qualify as using an ATDS under the *Facebook* definition. *Id.*

Here, we have exactly that. The telephone numbers to be dialed were provided to the VICIdial, the VICIdial did not create numbers on its own, rather it simply determined the order in which to call the numbers that were provided. Kalat, provides a helpful analogy:

> [I]f a person has a deck of cards, they can choose to order that existing set of 52 cards in various ways—such as grouping together the suits, or in ascending order of face value, or shuffling them randomly. No matter how the user sorts the deck, however, the same 52 cards remain. This is an entirely different scenario from a person using a software program to create and print their own cards.

[Kalat Dec. ¶ 41.]

The most important take away from Snyder's report is that the VICIdial cannot create telephone numbers from scratch "much less that this feature was used to place any specific call, including those allegedly made to plaintiff". [Kalat Dec. ¶ 25; Snyder Dec. ¶ 60.] Plaintiff, through

Snyder, cannot prove that VICIdial randomly and sequentially generates numbers to be dialed, because it simply does not have the capacity to dial numbers that are not provided via a pre-produced list.

## IV. CONCLUSION

None of these arguments can overcome the fact that the Supreme Court's decision in *Facebook* defeats Plaintiff's claim that the equipment used to place calls to Plaintiff constitute an ATDS. Accordingly, SPMC respectfully requests the Court to enter summary judgment, and dismiss Plaintiff's Complaint, with prejudice.

DATED: October 29, 2021

BALLARD SPAHR LLP

*/s/ Matthew A. Morr*
Matthew A. Morr

Attorneys for Defendants

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of October, 2021, I electronically filed a true and correct copy of the foregoing * through the Court's CM/ECF system, which will send a notice of electronic filing to all parties by operation of the court's electronic filing system.

*/s/ Sherri L. Clark*
Sherri L. Clark

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915